UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

> ```
> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED:_____
> ```

ALEX SCHIBLI,

                 Plaintiff,         :      12-cv-3057 (NSR)

   -against-

                                 :      OPINION AND ORDER

THE PORT AUTHORITY OF NEW YORK and
NEW JERSEY,

               Defendant.    :

---------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

      Plaintiff Alex Schibli ("Plaintiff") commenced the instant action pursuant to 29 U.S.C. §§ 621-634 against the Port Authority of New York and New Jersey ("Defendant"), seeking monetary damages for allegedly discriminating against Plaintiff on the basis of his age.

      Defendant now moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment, asserting there is no genuine dispute of material fact and Defendant is entitled to judgment on Plaintiff's age discrimination claim as a matter of law. Defendant aver that Plaintiff's age discrimination claims prior to April 23, 2009 are time-barred,[1] Plaintiff cannot show that the Port Authority discriminated against him, and Plaintiff's claims for hostile work environment are legally insufficient. For the following reasons, Defendant's motion for summary judgment is granted.

## I. THE FACTS

      The facts are gleaned from the Defendant's 56.1 statement, affidavits, and exhibits submitted with this motion, and are not in dispute except where noted. Because Plaintiff did not

---

[1] As discussed below, Defendant incorrectly applies 180 days as the statute of limitations rather than 300 days.

submit a 56.1 statement, Local Rule 56.1(c) requires this Court to deem the statement of material facts set forth in Defendant's 56.1 statement to be admitted.

Plaintiff Alex Schibli was born on December 3, 1939 in Baden, Switzerland. He immigrated to the United States in 1998. (Deposition of Alex Schibli dated April 16, 2013, hereafter "Schibli Tr.", pp. 6-7, annexed as Exhibit "A" to the declaration of Kathleen Gill Miller dated October 24, 2013 ("Miller decl.").) Plaintiff was employed by Artenyra, a temporary employment agency who contracted with the Port Authority to provide Mr. Schibli's services from 1999 to 2004. (Schibli Tr. p. 12,11. 22-25, p. 13,11. 2-6, annexed as Exhibit "A" to Miller decl.) From 1999 to 2004, plaintiff worked under Hector Orsini, who hired him in Real Estate on various energy saving projects. (Hector Orsini's sworn answers to written questions, annexed as Exhibit "B" to Miller decl.)

In April 2004, at age 65, Plaintiff applied for a temporary position with the Port Authority. (Mr. Schibli's letter application, resume and the Port Authority's employment application, annexed as Exhibit "C" to Miller decl.) On June 3, 2004, the Port Authority's Human Resources Department sent a letter to Plaintiff extending him an offer as a Project Coordinator in the Office of Policy and Planning which expressly set forth the terms of his employment as follows: (1) his hiring was limited to the duration of the assignment; (2) it was terminable at will; and (3) the Port Authority was under no obligation to offer him a permanent position. Plaintiff does not dispute that he signed this letter on June 7, 2004, stating that he read and understood it. (Letter of June 3, 2004, annexed as Exhibit "D" to Miller decl.; Schibli Tr. pp. 18-20, Exhibit "A" to Miller decl.) On June 7, 2004, plaintiff also signed a document prepared by the Human Resources Department which restated the terms of his temporary employment and stated that in the event a permanent position became available, his placement in that position

2

would be contingent upon his meeting all the qualifications for that position, including interviews and tests. (Memorandum of June 7, 2004, annexed as Exhibit "E" to Miller decl.)

From 2004 to 2007, Plaintiff worked under the supervision of Gail Yvette Davis on various energy projects in the Office of Policy and Planning, including working with the consultant Con Edison Solutions on energy saving proposals and energy conservation projects such as Peak Load Management at the Port Authority facilities. (Schibli Tr. pp. 22-29, Exhibit "A" to Miller decl.)

In 2007, Plaintiff, Gail Yvette Davis and their work assignments were transferred to the Office of Environmental Policy and Compliance. Christopher Zeppie was the director of that office. (Schibli Tr. pp. 30-31, 70, Exhibit "A" to Miller decl.)

During 2004-2009, Mr. Schibli worked with the Technology Department of the Port Authority to develop a web page for energy awareness and coordinated with outside consultants hired by the Port Authority to do energy audits at the Port Authority's facilities. (Schibli Tr. pp. 51-65, Exhibit "A" to Miller decl.; Gail Yvette Davis's sworn answer to plaintiff's written questions, pp. 8, 11, 14 annexed as Exhibit "F" to Miller decl.).

In February 2007, plaintiff applied for the position of Energy Management Specialist under Hector Orsini, but David Obradovich, who plaintiff believes had previously worked under Hector Orsini, was selected. (Schibli Tr. pp. 131-134, Exhibit "A" to Miller decl.).

From the time of his hire in June 2004, until his termination, plaintiff was paid an annual salary of $66,716. (Schibli Tr. p. 144, Exhibit "A" to Miller decl.).

Christine Weydig joined the Office of Environmental Policy and Compliance on January 20, 2009 as Deputy Director. (Affidavit of Christine Weydig, sworn to October 25, 2013, par. 2) ("Weydig aff.").

3

Alex Schibli testified that there were regular Monday morning meetings of staff conducted by the Director, Chris Zeppie, which were noticed through e-mail by the office administrator, but that after February 2009, he did not always receive notices. He acknowledged that on occasion, he received notices but did not attend. (Schibli Tr. pp. 155-162, Exhibit "A" to Miller decl.).

Christine Weydig held weekly staff meetings which were noticed to all her staff including plaintiff by means of a recurring invitation on Microsoft Outlook. Plaintiff did not always attend these meetings but did not complain to Ms. Weydig that he was not receiving notifications. (Weydig aff. pars. 4-5).

Plaintiff testified that he was excluded from two meetings at Stewart Airport in 2009. (Schibli Tr. pp. 154-155, Exhibit "A" to Miller decl.). He further testified that he was invited to four meetings on the boiler project for which the Port Authority hired an outside contractor in January 2009, but he was not invited to other meetings by the department (not his own) scheduling the meetings. (Schibli Tr. pp. 162-164, Exhibit "A" to Miller decl.). Plaintiff further testified that neither he nor his supervisor, Gail Yvette Davis, were invited to five meetings taking place between February and March 2007, run by the New York Power Authority ("NYPA") dealing with solar PV project at Port Authority facilities. (Schibli Tr. pp. 167-177, Exhibit "A" to Miller decl.). Christine Weydig attended meetings at Stewart Airport to which plaintiff was not invited because they concerned biomass, which was not a project to which he was assigned. (Weydig aff. par. 7). There were no meetings with NYPA in 2009 concerning solar energy because NYPA withdrew from the project. (Weydig aff. par. 25).

In early 2009, plaintiff was assigned by Christine Weydig to the Port Authority to attend meetings concerning the Boiler Management Working Group and to make a recommendations.

4

He made an oral recommendation that the Port Authority do a further study. (Schibli Tr. pp. 174-177, Exhibit "A" to Miller decl.). Mr. Schibli had no role in the Boiler Management Working Group other than to attend meetings and report back to his department. (Weydig aff. par. 26).

Plaintiff worked on PV solar energy of Newark Liberty International Airport ("Newark Airport") in 2007 when he was in the Office of Policy and Planning, but the system was not installed and subsequently in 2009, individuals at Newark Airport began a new solar project. (Schibli Tr. pp. 66-67, 126-127, 131, 190-193, Exhibit "A" to Miller decl.).

The solar energy project at Newark Airport that plaintiff worked on was based on rebates being offered by the State of New Jersey, but the project was not approved by the Port Authority's Board of Commissioners and the State adopted a different system. Interest in the solar panels was renewed in 2004 as an airport-based initiative which did not involve plaintiff or his department (Weydig aff. pars. 8-9, 24).

Plaintiff's work on solar PV systems at LaGuardia Airport did not result in any solar system being installed at that facility. (Schibli Tr. p. 89, Exhibit "A" to Miller decl.).

Between 2004 and 2009, Plaintiff did two walk-through audits at John F. Kennedy International Airport ("JFK") and made recommendations for solar PV projects but none of the solar projects were done while he worked at the Port Authority. (Schibli Tr. pp. 90-95, Exhibit "A" to Miller decl.).

In February 2007, the Port Authority issued a job ad to the public for the position of Energy Analyst in the Office of Environmental Policy and Compliance. Several hundred people applied for the position and the Human Resources Department culled this number down to approximately twenty candidates, including plaintiff, of whom seven were given interviews. (Affidavit of Frances Libenzon ("Libenzon aff.") sworn to October 25, 2013, par. 4.).

5

The interviews were based upon a series of eight questions designed to test competencies and technical skills. The candidates were interviewed by two raters, Christine Weydig, Deputy Director, Office of Environmental Policy and Compliance, and Frances Libenzon, a Business Partner in the Port Authority's Human Resources Department. Candidates were rated 1-7 on each question with 7 being the highest score. (Libenzon aff. pars. 5-7.).

On March 25, 2009, both Christine Weydig and Frances Libenzon interviewed Mario Suarez and rated him from 4 to 7. On April 7, 2007, Ms. Weydig and Ms. Libenzon interviewed plaintiff and based upon his answers, which lacked specificity and his poor communication skills, they both gave him ratings from 3 to 5. (Libenzon aff. par. 10, Exhibit 4 to Libenzon aff.; Weydig aff., par. 16, Exhibit "B" to Weydig aff.).

Mario Suarez was selected for the position based on his qualifications, the technical knowledge that earned him his high interview ratings and his communication skills. (Libenzon aff. pars. 8-9, Exhibit 3 to Libenzon aff.; Weydig aff. par. 15, Exhibit "A" to Weydig aff.).

In early 2009, the Port Authority departments were directed to reduce budgets by cutting costs. Christine Weydig determined as part of budget cutting measures to let the contract with SAIC, the energy consultant, expire. Since plaintiff was tasked with implementing SAIC recommendations, which he failed to do and since the contact expired, there was no further work for plaintiff in this area. (Weydig aff. pars. 19-21.).

Plaintiff's department determined not to extend plaintiff's employment based upon deficiencies in his performance, including his inability to bring projects beyond the planning stage by securing the support of the operating departments and engineering to reports such as the SAIC as well as his failure to communicate with others in the organization to advance the office's objectives. (Weydig aff. par. 29.).

6

Plaintiff admits that as of February, 2009, the SAIC energy scan at Stewart Airport was completed, the solar project at Newark International Airport was dormant and that the only projects he was working on were the employee energy awareness program and gathering information for the demand response program at the Port Authority Technical Center. (Schibli Tr. pp. 215-219, Exhibit "A" to Miller decl.) Plaintiff's status reports for February 6, 2009 and February 12, 2009 are annexed as Exhibit "B" to Miller decl. On or about May 26, 2009, Christopher Zeppie, the Director of the Office of Environmental Policy and Compliance, advised Mr. Schibli that his temporary employment would not be renewed. (Complaint.)

Plaintiff remained on the Port Authority's payroll until June 13, 2009. (PeopleSoft record for Alex Schibli annexed as Exhibit "I" to Miller decl.)

On October 19, 2009, plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on age. (Plaintiff's EEOC charge annexed as Exhibit "J" to Miller decl.)

On April 18, 2012, Mr. Schibli filed a pro se complaint alleging age discrimination based on the following: a) hostile work environment created by Christine Weydig and Christopher Zeppie by failing to invite him to meetings and failing to acknowledge his weekly reports; b) removing him as project manager for installation of the solar voltaic system at Newark Liberty International Airport; and c) failing to hire him for the Energy Analyst position for which Mario Suarez was hired; and terminating his temporary employment. (Complaint.)

## II. PROCEDURAL HISTORY

Plaintiff filed his complaint on April 18, 2012, alleging age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634. Specifically, Plaintiff alleges that Defendant discriminated against him by failing to hire him, failing to

7

promote him, and terminating his employment. Defendant moved for summary judgment on

January 27, 2014.

## III. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil

Procedure. The rule states in pertinent part:

> A party may move for summary judgment, identifying each claim or defense—or
> the part of each claim or defense—on which summary judgment is sought. The
> court shall grant summary judgment if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to judgment as a matter
> of law.

Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of

any genuine dispute or issue[2] of material fact by pointing to evidence in the record, "including

depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which

it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has fulfilled its preliminary burden,

the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact.

Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A

genuine dispute of material fact exists when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*,

510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585

F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Jeffreys

v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Courts must "constru[e] the evidence in

the light most favorable to the non-moving party and draw[] all reasonable inferences in its

---

[2] The 2010 amendment to the Rule retained the summary judgment standard of former subdivision (c), but replaced
"issue" with "dispute" because the term "better reflects the focus of a summary judgment determination." Fed. R.
Civ. P. 56 advisory committee's note on 2010 amendments. Thus, the terms are interchangeable in this context.

favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010)

(quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).  In reviewing the record,

"the judge's function is not himself to weigh the evidence and determine the truth of the matter,"

*Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)

("The function of the district court in considering the motion for summary judgment is not to

resolve disputed questions of fact . . . ."), nor is it to determine a witness's credibility, *Anderson*,

477 U.S. at 249.  Rather, "the inquiry performed is the threshold inquiry of determining whether

there is the need for a trial." *Anderson*, 477 U.S. at 250.

Where, as here, the intent of an individual is in dispute, "intent is always a subjective

matter of inference and thus rarely amenable to summary judgment." (quoting *Saratoga Vichy

Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980)); *Meiri v. Dacon*, 759 F.2d 989, 998

(2d Cir. 1985) ("[S]ummary judgment is ordinarily inappropriate where an individual's intent

and state of mind are implicated.").  However, "[s]tatements that are devoid of any specifics, but

replete with conclusions, are insufficient to defeat a properly supported motion for summary

judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita

Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do

more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v.

Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on

conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105,

114 (2d Cir. 1998))).

## IV. AGE DISCRIMINATION: DISPARATE TREATMENT

The ADEA protects employees who are at least 40 years old from adverse employment

actions.  29 U.S.C. § 631(a).  Under the ADEA, it is unlawful for an employer, *inter alia*, "to

9

discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Id.* § 623(a)(1).

To plead a claim of age discrimination under the ADEA, a plaintiff must allege: "(1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination based on age." *Gonzalez v. Carestream Health, Inc.,* 520 F. App'x 8, 10, n. 1 (2d Cir. 2013). The Second Circuit has characterized the burden of establishing a *prima facie* case in age discrimination cases as "minimal" and "de minimis." *Berube v. A&P,* 348 F. App'x 684, 686 (2d Cir. 2009) (citing *Zimmermann v. Assocs. First Capital Corp.,* 251 F.3d 376, 381 (2d Cir. 2001)). Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant, who must offer "a legitimate, nondiscriminatory rationale for its actions." *Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973) and *Schnabel v. Abramson,* 232 F.3d 83, 87 (2d Cir. 2000)). If the defendant offers such a rationale, the plaintiff must prove that the defendant's rationale is a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804. To raise a triable issue of fact concerning pretext at the summary judgment stage, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based . . . on discrimination." *Terry,* 336 F.3d at 138 (quoting *Stern v. Trustees of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir. 1997)).

Defendant moves for summary judgment on Plaintiff's claim for age discrimination. Defendant asserts that Plaintiff has insufficient evidence to support his allegations that Defendant intentionally discriminated against Plaintiff by failing to promote him and terminating his

10

employment because of his age.

### 1. Failure to Promote Under ADEA

To establish a *prima facie* case of a discriminatory failure to promote, a plaintiff ordinarily must demonstrate that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Petrosino v. Bell Atl.,* 385 F.3d 210, 226 (2d Cir. 2004) (internal quotation marks omitted).

### 2. ADEA Claim Arising Out of Plaintiff's Termination

The Second Circuit applies the *McDonnell–Douglas* framework to age discrimination under the ADEA. *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 106 (2d Cir. 2010). Plaintiff must show "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Id.*

The ADEA does not allow for mixed-motive discrimination claims. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 175 (2009). Thus, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.* at 176; *see Gorzynski,* 596 F.3d at 106 (applying *Gross* to Second Circuit law and maintaining use of *McDonnell–Douglas* burden shifting framework).

First, Plaintiff is covered under the ADEA because he was over 40 years old when the allegedly discriminatory acts took place. *See* 29 U .S.C. § 631(a). Second, Plaintiff was qualified for the position, but Defendant disputes that he performed his job in a satisfactory manner.

Third, Plaintiff alleges that he suffered several adverse employment actions. First, he

11

alleges that he failed to be promoted to a permanent position in 2007. Employment discrimination claims under the ADEA are considered timely if Plaintiff: (1) timely filed an administrative charge, (2) received a right-to-sue letter, and (3) commenced suit within ninety days of receiving the right-to-sue letter. *See* 42 U.S.C. § 2000e–5(e), (f); 29 U.S.C. § 626(d). "Discrimination claims under . . . the ADEA must ordinarily be 'filed' with the EEOC within 180 days of the date on which the 'alleged unlawful employment practice occurred.'" *Ford v. Bernard Fineson Dev. Ctr.,* 81 F.3d 304, 307 (2d Cir. 1996) (quoting 42 U.S.C. § 2000e–5(e)(1)); *see also* 29 U.S.C. § 626(d)(1). "However, if the alleged discrimination took place in a state or locality that has its own antidiscrimination laws and an agency to enforce those laws, then the time period for 'fil[ing]' claims with the EEOC is extended to 300 days." *Id.* (alteration in original) (citing 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. §§ 626(d)(2), 633(b)). Thus, in New York, a plaintiff typically has 300 days after the alleged discriminatory act to file a charge with the EEOC. *Harris v. City of N.Y.,* 186 F.3d 243, 248 n. 2 (2d Cir. 1999). Because Plaintiff's EEOC Charge was filed on October 19, 2009, his Federal ADEA claims based on conduct that occurred more than 300 days earlier (*i.e.* before December 23, 2008), including, without limitation, the 2007 failure to promote, are time-barred. *See Heller v. Consol. Rail Corp.,* 331 F. App'x 766, 768 (2d Cir. 2009). The Supreme Court has clarified that an employer's failure to promote is a "discrete discriminatory act" that "starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113–15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (distinguishing discrete acts from continuing violations like hostile work environment claims which are premised on theory of "cumulative effect"); *Petrosino v. Bell Atl.,* 385 F.3d 210, 220 (2d Cir. 2004) (each failure to promote is discrete act which gives rise to separate cause of action that must be timely brought).

Plaintiff also alleges that Defendant failed to promote him to a permanent position and terminated him in 2009. At the pleading stage, these allegations are sufficient to set forth adverse employment action. Denial of promotion, including in the form of refusing to hire a temporary worker on a permanent basis, is recognized by courts as a materially adverse, and therefore more than trivial, employment action. *Mills v. S. Connecticut State Univ.,* 519 F.App'x 73, 75 (2d Cir. 2013) ("[failure to promote is] within the core activities encompassed by the term 'adverse actions'") (citing *Treglia v. Town of Manlius,* 313 F.3d 713, 720 (2d Cir. 2002)); *see also Chansamone v. IBEW Local 97,* 523 F. App'x 820, 822, n. 2 (2d Cir. 2013) (treating employer's refusal to hire temporary employee for permanent position as potential failure to promote).

While Plaintiff may not meet the second element of satisfying his job duties, he also has issues with the fourth element. According to Defendant, Plaintiff cannot satisfy the fourth element of the *prima facie* case, demonstrating that the circumstances of his termination give rise to an inference of discrimination.  For purposes of a summary judgment motion in a disparate treatment case, "an ADEA plaintiff who is replaced by a significantly younger worker must offer some evidence of a defendant's knowledge as to the significant age discrepancy to support a *prima facie* inference of discriminatory intent." *Bucalo v. Shelter Island Union Free Sch. Dist.,* 691 F.3d 119, 130 (2d Cir. 2012) (quoting *Woodman v. WWOR-TV, Inc.,* 411 F.3d 69, 90 (2d Cir. 2005)).  While Plaintiff argues that he was replaced by a worker younger than him, Defendant argues that Plaintiff was not in fact replaced because his position was eliminated entirely. (Def. Mem. at 13.) Additionally, there is doubt Defendant knew Mario Suarez's age and whether or not he belonged to the age-protected group.

While Plaintiff may have been able to show that age discrimination was a motivating factor in his termination, he cannot show that it was the "but-for" cause of his termination, and

13

therefore, cannot establish a prima facie case under the *McDonnell–Douglas* framework. While

he is a member of a protected class under the ADEA as he was over 40 at the time of the

incident, he suffered an adverse employment action, and he arguably was satisfactory in

performing his job duties, Plaintiff points to no evidence that could lead a reasonable juror to

infer discrimination. The Supreme Court eliminated "mixed-motive" analysis in *Gross,* and a

plaintiff "must show that that age was the 'but-for' cause of the challenged adverse employment

action" and not just a contributing or motivating factor. *Gross,* 557 U.S. at 178–179. Because he

cannot establish that his age was the but-for cause of his termination, Plaintiff has presented no

facts that would allow a reasonable juror to return a verdict in his favor. Accordingly,

Defendant's summary judgment motion is granted as to Plaintiff's age discrimination claims.

Even assuming, *arguendo,* Plaintiff could put forward a prima facie case of age

discrimination, Defendant proffered a legitimate, nondiscriminatory explanation for his

termination. Here, Defendant's evidence demonstrates that Plaintiff unsatisfactory performed his

job assignment and the oral job examination. (Def. Mem. at 1.) It is undisputed that Mario

Suarez performed better than Plaintiff in his interview. This showing is supported by

documentary evidence from Plaintiff's interview ratings and the affidavits from his supervisor

Christine Weydig, Deputy Director of the Office of Environmental and Energy Programs, and

also from Frances Libenzon of Human Resources.

The remaining issue, then, is whether Plaintiff has proffered admissible evidence

sufficient to permit a reasonable jury to find that Defendant's reason for terminating Plaintiff was

a pretext for age discrimination.  Plaintiff admits he has no direct evidence of Defendant's

discriminatory animus toward him, but rather relies upon circumstantial evidence.  Plaintiff

testified that Defendant discriminated against him based on his age because he was a long-

tenured temporary employee who was not promoted and never received a raise. However, "age and years of service are analytically distinct" such that an employer can consider one and not the other. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). Thus, "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age," as is typical with long tenure. *Id.*; *cf.* 29 U.S.C. § 623(f)(1) (not unlawful discrimination "where the differentiation [among employees] is based on reasonable factors other than age"). At his deposition, Plaintiff was unable to explain why he believed he was being discriminated against because of his age, other than to continually refer to his years of service and experience. As mixed-motive discrimination claims are not actionable under the ADEA, *Gross*, 557 U.S. at 175, any alleged consideration of Plaintiff's tenure is insufficient to raise a triable issue of fact concerning whether Defendant's asserted reasons for Plaintiff's termination were a pretext for age discrimination.

In support of his contention that Defendant fired him because of his age, Plaintiff submits correspondence from his coworkers, expressing goodwill and wishing him farewell, in response to his announcement of departure. Plaintiff presents only conjecture insufficient to raise a triable issue of fact. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). Plaintiff's proffer fails to raise a triable dispute of material fact concerning whether Defendant's reasons for his termination were pretextual for age discrimination. Accordingly, Defendant's summary judgment motion seeking to dismiss Plaintiff's claim on a disparate treatment theory of liability, to the extent alleged, is granted.

## V. HOSTILE WORK ENVIRONMENT CLAIM

15

Plaintiff alleges (in conclusory fashion) that Defendant subjected him to a hostile work environment because of his age in violation of ADEA. To state a claim for a hostile work environment under federal law, "[P]laintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive;' (2) 'creates an environment that the plaintiff subjectively perceives as hostile or abusive;' and (3) 'creates such an environment because of the plaintiff's [age.]'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007); *Brennan v. Metropolitan Opera Ass'n. Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII."). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted).

Plaintiff's hostile work environment claims fail under federal law because the pleadings contain no factual allegations to support Plaintiff's conclusion that Defendant engaged in severe or pervasive conduct "because of" Plaintiff's age. As discussed above, Plaintiff fails to allege any facts indicating that the actions allegedly taken by Defendant were on account of his age. Even if the 2009 failure to promote and termination, at this stage of the case, could plausibly be attributed to age discrimination, these discrete episodes do not rise to the level of "discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Francis v. Elmsford Sch. Dist.*, 263 F. App'x 175, 178 (2d Cir. 2008) (teacher's allegations that she was "unfairly transferred among several different teaching assignments ... provided with an uncomfortable student chair ... forced to go up and down stairs to store and retrieve her personal effects; and denied a budget for teaching materials" did not

16

support a claim of hostile work environment under the ADEA); *Dowrich–Weeks v. Cooper Square Realty, Inc.,* 535 F. App'x 9, 13 (2d Cir. 2013) ("Weeks' allegations consist of several isolated incidents over the course of a two-year period that do not rise to the level of frequency or severity necessary to establish a hostile work environment claim."); *Clarke v. Intercontinental Hotels Group, PLC,* No. 12 Civ. 2671, 2013 WL 2358596, at *10 (S.D.N.Y. May 30, 2013) (Plaintiff's allegations that "her supervisors snubbed her; spoke to her rudely to her and insulted her worth ethic; excessively scrutinized her work; and gave her more work to do than other employees ... do not plausibly point to a work environment that is sufficiently abusive to constitute a hostile workplace").

## VI. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully requested to terminate this motion (Doc. 45).

Dated: April 2, 2014                              SO ORDERED:
       White Plains, New York

                                                                        4/2/14
                                             _____
                                                  NELSON S. ROMÁN
                                             United States District Judge